

# NUMBER 13-25-00016-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SAN BENITO ECONOMIC DEVELOPMENT
CORPORATION, INC., FRED SANDOVAL,
MARIO PALOMO, RUBEN CORTEZ,
ANNA GARZA LLANES, DANIEL CORTEZ,
GABRIEL HERRERA, DEBORAH A. MORALES,
HECTOR GOMEZ, THOMAS W. GOODMAN II,
RICARDO GUERRA, PEDRO A. GALVAN,
AND JOE E. NAVARRO,                                    Appellants,

v.

VARCO REAL ESTATE SAN BENITO, LLC,                      Appellee.

## ON APPEAL FROM THE 107TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Chief Justice Tijerina**

In this accelerated appeal, appellants Fred Sandoval, Mario Palomo, Anna Garza

Llanes, Daniel Cortez, Gabriel Herrera, Deborah A. Morales, Hector Gomez, Thomas W. Goodman II, Ricardo Guerra, Pedro A. Galvan, and Joe E. Navarro (collectively, the Individuals) contend by six issues that the trial court improperly granted a temporary injunction in favor of appellee Varco Real Estate San Benito, LLC (Varco).[1] By seven issues, appellant San Benito Economic Development Corporation, Inc. (SBEDC) contends that the trial court should have granted its plea to the jurisdiction (issues one and two) and challenges the trial court's temporary injunction (issues three through seven). We affirm in part and reverse and remand in part.

## I. BACKGROUND

On November 6, 2018, Varco and SBEDC entered a performance and lease agreement requiring Varco to construct a mixed-use commercial plaza known as Resaca Village on an undeveloped nine-acre tract of land owned by SBEDC. Varco agreed to operate Resaca Village at its own expense for at least sixteen years, and SBEDC agreed to lease the property to Varco. The agreement allowed SBEDC to terminate the agreement upon any default. Construction began in 2019, and according to Varco, it has spent over $8 million on the development of Resaca Village.

On August 18, 2023, SBEDC served Varco with notice of breach of the agreement, and on March 26, 2024, SBEDC served Varco with a subsequent notice of default and request for records. On April 18, 2024, SBEDC served Varco with a notice of termination and request for records. Varco sued SBEDC for breach of contract on April 29, 2024, alleging that SBEDC wrongfully (1) accused Varco of breach of contract, (2) attempted to terminate the contract, (3) demanded that Varco stop construction, (4) demanded that

---

[1] Ruben Cortez, a defendant in the trial court, did not appeal the trial court's judgment.

Varco turn over operations of Resaca Village to SBEDC, and (5) asked for an additional $1.8 million from Varco.

On May 24, 2024, SBEDC filed a counterclaim for negligence, breach of contract, violations pursuant to the Texas Deceptive Trade Practices Act (DTPA), and trespass to try title. In August 2024, the City of San Benito (the City) issued a "stop-work order due to violations of city ordinances section 13.03.011(b), which prohibits the connection of a private water line to a public water line "without a metering device in place approved by the [C]ity" and section 13.02.062(c), which states that all water-connection infrastructure belongs to the City. Varco denied the violations and claimed they "stemmed from a subcontractor's alleged improper tapping of a waterline at the job site." Varco asserts that once the stop-work order was issued, it immediately removed the improper waterline connection, promptly paid the applicable fines, tendered $10,000 to the City, repeatedly offered to pay for any improperly taken water, and repeatedly "tried to get its construction permit reinstated." However, the City did not reinstate the permit. Varco alleges that "the stop-work order remained in place due to a utility-easement issue that necessitated" SBEDC's and the City's "cooperation to resolve." Varco filed an amended petition in September 2024, to "raise this factual development as an additional basis for the breach-of-contract claim."[2]

Varco claims that, in December 2024, SBEDC representatives contacted Varco's Resaca Village tenants asking them to agree to pay rent to SBEDC instead of Varco by signing a "Notice of Attornment." On December 31, 2024, Varco filed a second amended

---

[2] Varco also sued the City in another cause for claims related to the stop-work order pursuant to chapter 245 of the Texas Local Government Code and for declaratory judgment. *See* TEX. LOC. GOV'T CODE ch. 245.

petition and application for temporary restraining order (TRO) and temporary injunction. Varco added defendants including: (1) SBEDC directors Sandoval (also the City Manager), Palomo, Llanes, Daniel Cortez, Herrera, Morales (also a City Commissioner), Gomez, Goodman (also a City Commissioner), and Guerra (also the City's Mayor) (collectively, the Directors); (2) City Commissioners Galvan and Navarro; and (3) Ruben Cortez, whom Varco accuses of "contacting tenants at the behest of [SBEDC] and/or the City."[3] Varco sought the trial court's "intervention . . . to prevent irreparable harm . . . stemming from [SBEDC's] willful and continuing breaches of its contractual obligations." Varco claimed SBEDC along with its executive director Sandoval and assistant executive director Palomo, engaged in harassment of its tenants. Varco accused SBEDC and "Sandoval, who doubles as . . . SBEDC's Executive [D]irector" of "engag[ing] in a course of conduct to actively obstruct Varco's efforts to complete the final phase of the Resaca Village project."

Varco averred that the stop-work order had been "in place for months, hindering construction without providing Varco with an opportunity to cure any alleged issues or defects." Varco alleged that a civil conspiracy existed between SBEDC and the City commissioners. It further claimed "that SBEDC had breached the Ground Lease by failing to secure a valid utility easement for a water line that supplies water to tenants in Resaca Village" and that SBEDC had "actively hindered its efforts to complete construction by ensuring that the stop work order remains in place."

Varco requested that the trial court prohibit SBEDC from: (1) "wrongfully deny[ing] or attempt[ing] to deny Varco access to the Resaca Village project; (2) "continu[ing] to

---

[3] We refer to Ruben Cortez and Daniel Cortez by their first names for clarity.

4

breach its obligations under the Ground Lease"; and (3) "directly or indirectly interfering with, impairing, or adversely impacting Varco's efforts to operate or construct the Resaca Village project." Varco further requested that the trial court order SBEDC to "immediately . . . [work to] secure all permits, approvals, authorizations, and easement necessary to lift the stop work order." The trial court granted a TRO and set a temporary injunction hearing for January 14, 2025, (January 14 hearing).

On January 7, 2025, SBEDC filed a plea to the jurisdiction asserting governmental immunity from Varco's tort claims, and the trial court set it for the same day as the January 14 hearing. Varco filed a third amended petition asserting causes of action for declaratory judgment, breach of contract, quantum meruit, violation of Texas Local Government Code Chapter 245, tortious interference, and ultra vires conduct. Varco also alleged that the appellants were liable based on theories of civil conspiracy, joint enterprise, and respondeat superior. On January 9, 2025, Varco filed a brief in support of its application for a temporary injunction arguing that it had a probable right of recovery on each of its pleaded causes of action but "focused" on its breach of contract and tortious interference claims. Varco argued that pursuant to the theories of civil conspiracy, joint enterprise, and respondeat superior, it would prevail against all appellants for interference with its contractual obligations. Varco claimed that irreparable harm would be imminent without a temporary injunction, which would also preserve the status quo.

At the January 14 hearing, the trial court orally denied SBEDC's plea to the jurisdiction. Varco's trial counsel requested that the trial court "hold off on that ruling because . . . they have this tactic that as soon as this is ruled on, they're going to stay every matter before this Court." The trial court replied, "All right. I'll hear your temporary

5

injunction argument." SBEDC's trial counsel replied, "[W]e're filing a notice of appeal as we speak as to the denial of the plea to the jurisdiction, which they say it doesn't help, maybe, but that's the law, that's what we're entitled to do." SBEDC's trial counsel then said, "[W]e just filed the notice of appeal, and that stays the proceedings. They can't get into the injunction." The trial court responded, "Well, I'll rescind the order, and I'll take it under consideration at this time and I'll read this case law submitted." SBEDC's trial counsel said, "I can file a notice of appeal on a refusal to rule on . . . [the] plea to the jurisdiction." The trial court continued with the temporary injunction hearing. SBEDC's trial counsel stated:

> And with all due respect, Your Honor, setting your docket, I mean it has to comply with Texas law, state law. So I filed a notice of appeal. This matter is stayed. All proceedings related to this matter are stayed, so we strenuously object—I don't have time to go [to] the Court of [A]ppeals to say stay this, but we strenuously object to proceeding with any matter today since I filed a notice of appeal.

The trial court "noted" SBEDC's objection and heard the temporary injunction evidence. The trial court later signed an order denying the plea to the jurisdiction and granting the temporary injunction by enjoining SBEDC, the Directors, the City Commissioners, and Ruben Cortez from (1) either collecting or asserting ownership of the rent, (2) communicating with Varco's tenants about the lease agreements, and (3) enforcing the stop-work order. This appeal followed.

## II.    PLEA TO THE JURISDICTION

By its first issue, SBEDC contends the trial court should have granted its plea to the jurisdiction because the Development Corporation Act (DCA) provides that as a Type B economic development corporation (EDC), it is a governmental unit that is "not liable for damages arising from the performance of a governmental function." *See* TEX. LOC.

6

GOV'T CODE § 505.106 Therefore, according to SBEDC, its immunity has not been waived for Varco's claims of civil conspiracy, tortious interference with a contract, and joint enterprise.[4] Varco responds that the Texas Supreme Court case *Rosenberg Development Corp. v. Imperial Performing Arts, Inc.*, supports the trial court's denial of SBEDC's plea to the jurisdiction because it held that "[EDCs] are not governmental entities in their own right and therefore are not entitled to governmental immunity." 571 S.W.3d 738, 741 (Tex. 2019).

## A. Standard of Review

We review a plea to the jurisdiction de novo. *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021). When the pleadings are challenged in a plea to the jurisdiction, the appellate court determines whether the plaintiff has alleged facts affirmatively demonstrating the trial court's jurisdiction. *Id.* We must liberally construe the pleadings in favor of the plaintiff's intent. *Id.* "Only if the pleadings affirmatively negate jurisdiction should the plea to the jurisdiction be granted without affording the plaintiffs an opportunity to replead." *Hou. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016).

## B. Immunity From Suit

The state and its agencies are protected by sovereign immunity, which includes (1) immunity from suit although undisputedly liable and (2) immunity from liability even if the state consents to suit. *Rosenberg Dev. Corp.*, 571 S.W.3d at 746. "Immunity from *suit* recognizes the judiciary's limited authority over its sovereign creator and thus implicates

---

[4] SBEDC does not challenge the trial court's denial of its plea to the jurisdiction regarding Varco's causes of action for declaratory action, breach of contract, quantum meruit, or violations of Chapter 245.

the courts' subject-matter jurisdiction to resolve a dispute against the state." *Id.* (emphasis added). Immunity from *liability* is not jurisdictional and may not be pleaded in a plea to the jurisdiction because it is an affirmative defense. *Id.* (emphasis added).

Though counties, cities, and school districts are not considered sovereign, they operate as the state's agent when performing governmental functions, and in such circumstances, they enjoy immunity from suit. *Id.* However, "no immunity exists for acts performed [by those entities] in a proprietary, *non-governmental* capacity." *Id.* at 746–47 (emphasis added). Moreover, a government unit and its agents acting in a governmental capacity are generally immune from all common law intentional tort claims unless immunity is specifically waived by statute.[5] *Franka v. Velasquez*, 332 S.W.3d 367, 375 (Tex. 2011) (explaining that it is firmly established "that any tort claim against the government is brought 'under' the [TTCA] for purposes of section 101.106, even if the [TTCA] does not waive immunity"); *Pineda v. City of Houston*, 175 S.W.3d 276, 280–81 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("[A] governmental entity does not waive its sovereign immunity to a party's claim for personal injury or death if that claim arises out of an intentional tort.").

## C.    The DCA

The DCA was enacted because "communities in the state have been at a critical disadvantage in competing with communities in other states for the location or expansion of business enterprises because of the availability and prevalent use in all other states of

---

[5] The Texas Tort Claims Act (TTCA) does not waive immunity for intentional tort claims. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.025 (waiving immunity from suit against a government unit for negligence in the operation or use of a motor-driven vehicle or equipment that causes injury or death and for "personal injury or death so caused by a condition or use of tangible personal or real property"), 101.057 ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort. . . .").

8

financing and other special incentives." *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 526 S.W.3d 693, 703 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 571 S.W.3d at 738 (quoting TEX. LOC. GOV'T CODE § 501.004(a)(6)). The DCA allows municipalities to create a Type B nonprofit EDC, which "may use a percentage of a sales and use tax imposed by the municipality, or may use the proceeds from revenue bonds, to pay the costs of specific projects authorized" by the DCA. *Id.* (citing TEX. LOC. GOV'T CODE §§ 505.251, 505.302); *see* TEX. LOC. GOV'T CODE § 505.003 (authorizing a municipality to create a Type B EDC).

> An [EDC] also has all powers incidental to or necessary for the performance of its statutory authority to sue and be sued with respect to a project undertaken by the corporation, to adopt and amend bylaws for the corporation's affairs, to lease or sell all or any part of a project, to donate or convey property to an institute of higher education, to make a secured or unsecured loan to finance all or part of the cost of a project, and to issue, sell, or exchange bonds.

*Rosenberg Dev. Corp.*, 526 S.W.3d at 703.

## D.    *Rosenberg*

In *Rosenberg*, the Rosenberg Development Corporation (RDC), a Type B EDC, agreed to pay Imperial Performing Arts, Inc. (Imperial) $500,000 to, among other things, lease an arts center, which it intended to renovate and open as a theater. *Rosenberg Dev. Corp.*, 571 S.W.3d at 741–42. A suit ensued, and on appeal, the only issue was whether immunity barred Imperial's breach of contract and declaratory judgment claims. *Id.* at 742. The court of appeals held that RDC did not have immunity from suit because it was not an agency of the State. *Rosenberg Dev. Corp.*, 526 S.W.3d at 703. The court of appeals reasoned that when the statute is read as a whole, it does not appear that the legislature intended "to grant [an EDC] 'powers of government,'" and an EDC does not

9

"perform traditional government functions or engage in traditional government activities." *Id.* at 704; *see also* TEX. LOC. GOV'T CODE § 501.055(b) ("A corporation is not a political subdivision or a political corporation for purposes of the laws of this state").

The Texas Supreme Court affirmed. *Rosenberg Dev. Corp.*, 571 S.W.3d at 752. The Court stated: "By and large, the projects an [EDC] are authorized to pursue have a governmental flair, but not so uniquely or so definitively that only a governmental entity would engage in those activities." *Id.* at 750. The Court explained that "[t]he Legislature simply did not grant [EDCs] 'powers of government' to perform essential governmental functions or activities." *Id.* at 751. The Court concluded that "[c]onsidering the [DCA] as a whole . . . the Legislature did not authorize municipalities to create [EDCs] as distinct governmental entities entitled to assert immunity in their own right." *Id.* It reasoned that immunity from suit "is limited to those entities acting as an arm of the state government" and "[d]espite fulfilling public purposes, [EDCs] do not exist like an arm of the state government imbued with aspects of sovereignty such as immunity from suit." *Id.* at 752.

SBEDC argues that the *Rosenberg* Court merely held that EDCs are not immune from *breach of contract* suits and did not determine that EDCs are immune from *all* suits involving tort claims. Although the cause of action involved in *Rosenberg* was a breach of contract claim, the Texas Supreme Court emphasized that "the fundamental purposes of governmental immunity do not countenance immunizing [EDCs] like RDC from suit nor does the [DCA] purport to contemplate the same." *Id.*; *see also Hitchcock Indus. Dev. Corp. v. Cressman Tubular Prods. Corp.*, 698 S.W.3d 29, 34 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) ("The high court stated that the [DCA] was 'notably unique' in the 'directness' with which the Legislature stated that [EDCs] are not political subdivisions or

10

political corporations and should not be given attributes of sovereignty." (quoting *Rosenberg Dev. Corp.*, 571 S.W.3d at 747)). The Court determined that an EDC is not a distinct governmental entity entitled to immunity from suit and is not considered an arm of the State. *Rosenberg Dev. Corp.*, 571 S.W.3d at 752; *see Somer v. OakBend Med. Ctr.*, No. 01-24-00187-CV, 2025 WL 2446015, at *7 (Tex. App.—Houston [1st Dist.] Aug. 26, 2025, no pet.) (mem. op.). It did not limit that determination to a specific cause of action, and we decline SBEDC's invitation to create such a limit here. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 752 ("We hold only that RDC does not independently possess governmental immunity as an arm of the state."); *Hitchcock Indus. Dev. Corp.*, 698 S.W.3d at 34 (applying *Rosenberg* to a tort action against a Type A EDC and concluding it did not have immunity from suit because it is neither a government unit nor State agent). Thus, the Texas Supreme Court concluded that EDCs do not have immunity from suit based on their relationship with the sovereign, and it did not limit that determination to a specific cause of action. *Rosenberg Dev. Corp.*, 571 S.W.3d at 752. Therefore, we decline to draw a claims-based distinction to the immunity question. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 752 ("We hold only that RDC does not independently possess governmental immunity as an arm of the state."); *Hitchcock Indus. Dev. Corp.*, 698 S.W.3d at 34 (applying *Rosenberg* to a tort action against a Type A EDC and concluding it did not have immunity from suit because it is neither a government unit or State agent).

E.     Section 505.106(a), (b)

SBEDC cites several pre-*Rosenberg* cases holding that DCA section 505.106(b) grants EDCs governmental immunity from suit for tort claims. Section 505.106(a) states that a Type B EDC is "not liable for damages arising from the performance of a

11

governmental function" and subsection (b) states, "For purposes of Chapter 101, Civil Practice and Remedies Code, a Type B corporation is a governmental unit and the corporation's actions are governmental functions." TEX. LOC. GOV'T CODE § 505.106.

In *Rosenberg*, the Texas Supreme Court observed that section 505.106 of the DCA "does not purport to grant immunity" to an EDC. *Rosenberg*, 571 S.W.3d at 747. Agreeing with the lower court, the Supreme Court noted that "subsection (a)'s plain terms only seek to limit an [EDC's] *liability* for certain remedies—that is 'damages' arising from the [EDC's] performance of any governmental functions—without reference to the [EDC's] 'governmental status' or 'immunity.'" *Id.* (emphasis added). As to subsection (b), the lower court concluded that it granted Type B EDCs "immunity from *liability* for [tort] claims arising from [the EDC's] performance of a governmental function." *Rosenberg Dev. Corp.*, 526 S.W.3d at 709 (emphasis added). The Supreme Court agreed, stating "subsection (b) merely imports the [TTCA's] limitations on liability and damages." *Rosenberg Dev. Corp.*, 571 S.W.3d at 747. It observed that "the [TTCA] does not create sovereign immunity"; rather, "it provides a limited waiver of that immunity[] such that an entity may be sued and damages had on the terms specified in the [TTCA]." *Id.* (citation modified). In any event, as previously explained, immunity from *liability* is not jurisdictional and cannot be brought in a plea to the jurisdiction. *Id.* at 746. Therefore, we cannot conclude that section 505.106 grants EDCs immunity from *suit* for tort claims.[6] *Id.* at 751; *Hitchcock*

---

[6] The *Hitchcock* court noted the following:

Before *Rosenberg* was decided, three sister courts of appeals concluded that Local Government Code section 504.107(b), or its substantially similar predecessor statute, conferred governmental immunity on Type A economic development corporations. *See Weir Bros., Inc. v. Longview Econ[.] Dev[.] Corp.*, 373 S.W.3d 841, 845–46 (Tex. App.—Dallas 2012, no pet.); *City of Weslaco v. Borne*, 210 S.W.3d 782, 788 n.1 (Tex. App.—Corpus Christi 2006, pet. denied); *Rayl v. Borger Econ. Dev. Corp.*, 963 S.W.2d 109, 114

12

*Indus. Dev. Corp.*, 698 S.W.3d at 34.

**F.      Section 101.057(2)**

Finally, SBEDC argues that as a government entity, it is immune from suit pursuant to TTCA section 101.057(2) of the TTCA, entitled "Civil Disobedience and Certain Intentional Torts," which states that TTCA Chapter 101 does not apply to a claim "arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities." *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2).

The TTCA waives immunity from suit for governmental units and for agents of the State engaged in government functions. *City of League City v. Jimmy Changas Inc.*, 619 S.W.3d 819, 822–23 (Tex. App.—Houston [14th Dist.] 2021), *aff'd*, 670 S.W.3d 494 (Tex. 2023) ("When political subdivisions of the state act in a governmental capacity, they share in the state's immunity, which is then referred to as governmental immunity."). But the Texas Supreme Court in *Rosenberg* clearly held that EDCs are not governmental entities for purposes of immunity from suit, and SBEDC cannot claim that it was an agent of the State because the *Rosenberg* court again clearly held EDCs are not. *Rosenberg Dev. Corp.*, 571 S.W.3d at 752. Therefore, we conclude that this argument is meritless. *See id.*; *Hitchcock Indus. Dev. Corp.*, 698 S.W.3d 29, 34 ("Under the *Rosenberg* precedent,

---

(Tex. App.—Amarillo 1998, no pet.). But these cases conflict with the reasoning of the Supreme Court's opinion in *Rosenberg*, which we are bound to follow. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022); *Lubbock* [*County*]*v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002). Under the *Rosenberg* precedent, the text of Local Government Code Section 504.107(b) does not purport to confer immunity and merely imports the [TTCA]'s limitations on liability and damages. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 747. Therefore, the Corporation does not have governmental immunity, and its appellate arguments lack merit. *See id.*

*Hitchcock Indus. Dev. Corp. v. Cressman Tubular Prods. Corp.*, 698 S.W.3d 29, 34 (Tex. App.—Houston [14th Dist.] 2024, pet. denied).

13

the text of Local Government Code section 504.107(b) does not purport to confer immunity and merely imports the [TTCA's] limitations on liability and damages. Therefore, the Corporation does not have governmental immunity, and its appellate arguments lack merit."). We overrule SBEDC's first issue.[7]

### III.     THE TEMPORARY INJUNCTION

SBEDC contends by its third through seventh issues, and the Individuals by their first through sixth issues, that the trial court improperly granted Varco's motion for temporary injunction.

### A.     Applicable Law and Standard of Review

A temporary injunction is an extraordinary remedy that preserves the status quo of the litigation's subject matter prior to a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction issues if there is a cause of action against the defendant, there is a probable right to the relief sought, and there is a probable, imminent, and irreparable injury that exists in the interim. *Id.* An irreparable injury is shown if an award of damages cannot adequately compensate an injured party "or if the damages cannot be measured by any certain pecuniary standard." *Id.*

The trial court has discretion to either deny or grant a temporary injunction. *Id.* A trial court abuses its discretion by misapplying the law to the facts or by granting a temporary injunction that is not reasonably supported by evidence. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 916 (Tex. App.—Dallas 2006, no pet.). "We limit

---

[7] By its second issue, SBEDC contends that because it has immunity from suit, the trial court should not have granted the temporary injunction because Varco failed to "show a probable right to recovery for the specific relief pled for its various intentional torts." This issue assumes that SBEDC prevailed on its first issue. However, we have concluded that SBEDC does not have immunity from suit; therefore, we overrule SBEDC's second issue.

14

the scope of our review to the validity of the order, without reviewing or deciding the underlying merits, and will not disturb the order unless it is so arbitrary that it exceeds the bounds of reasonable discretion." *Henry v. Cox*, 520 S.W.3d 28, 33–34 (Tex. 2017) (citation modified) (quoting *Butnaru*, 84 S.W.3d at 204).

> When reviewing the particulars of a temporary injunction, we are not limited to the reasons stated by the trial court. *Hsin-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 298 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). We review all of the evidence presented and indulge all legitimate inferences from the evidence in the light most favorable to the temporary injunction. *Id.*; *see Vaughn v. Intrepid Directional Drilling Specialists, Ltd.*, 288 S.W.3d 931, 936 (Tex. App.—Eastland 2009, no pet.). "If such a review of the evidence will support any findings of fact that would, in turn, support the trial court's judgment, those findings are implied in the judgment, itself." *Vantage Drilling Co.*, 474 S.W.3d at 298 (quoting *Erickson v. Rocco*, 433 S.W.2d 746, 750 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.)). Because a trial court cannot abuse its discretion in reaching a correct result for improper reasons, we will uphold a trial court's order on any ground that finds support in the record. *Id.* (citing *In re ExxonMobil Corp.*, 97 S.W.3d 353, 358 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding)).

*Est. of Shultz*, No. 11-21-00177-CV, 2022 WL 4099404, at *3 (Tex. App.—Eastland Sept. 8, 2022, no pet.) (mem. op.).

## B.     Election of Remedies

By their first issue, the Individuals contend that Varco cannot show a probable recovery of the relief sought because the TTCA's election of remedies provision bars Varco's suit against them.[8] Specifically, appellants state, "If a plaintiff's allegations against the City and subsequent allegations against the individual Defendants involve the same subject matter, they are irrevocably barred after first suing the City."

"The TTCA provides a limited waiver of immunity for certain tort claims against the

---

[8] *See McFadden v. Olesky*, 517 S.W.3d 287, 295 (Tex. App.—Austin 2017, pet. denied) (stating "[b]y its plain language and very nature, the election-of-remedies provision is . . . a jurisdictional constraint[,] . . . a jurisdictional requirement") (quoting *City of Hou. v. Esparza*, 369 S.W.3d 238, 249–51 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)).

government." *Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 354 (Tex. 2013) (quoting TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109). "[T]he TTCA imposes liability on a governmental unit for the negligent acts of employees acting in the scope of employment if the injury claimed 'arises from the operation or use of a motor-driven vehicle' and the employee would have been personally liable under Texas law." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 101.021(1)). The TTCA also imposes liability on a government unit for the injury or death caused by a condition or use of tangible personal or real property if the government would be liable as a private person. TEX. CIV. PRAC. & REM. CODE § 101.021(2). The TTCA has a section entitled "Election of Remedies," stating:

> The filing *of a suit under this chapter* against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
>
> . . . .
>
> If a *suit is filed under this chapter* against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

*Id.* § 101.106(a), (e) (emphasis added). The election of remedies provision also applies to all common-law torts. *Franka*, 332 S.W.3d at 369. Thus, if the plaintiff sues the government unit for any tort, the TTCA's election of remedies provision bars any suit against the unit's employees if it relates to the same subject matter. TEX. CIV. PRAC. & REM. CODE § 101.021; TEX. CIV. PRAC. & REM. CODE § 101.106(a), (e); *Franka*, 332 S.W.3d at 369; *see also Hintz v. Lally*, 305 S.W.3d 761, 766 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("By requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the [TTCA] or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces

delay and duplicative litigation costs.") (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008)).

Appellants do not claim, nor does the record indicate, that Varco sued the City for any torts or under the TTCA's limited waiver of immunity. The Individuals nonetheless argue, without citation to relevant authority, that "It is not the specific claims however, but the subject-matter of the claims that controls" and that the "Individuals are entitled to immunity when the claims against the City and the employee involve the same subject matter, even where the same claim or cause of action is not asserted against both or where a tort claim is not alleged against the City." *See* TEX. R. APP. P. 38.1(i).

The cases the Individuals cite do not involve situations where non-tort claims were brought against the government unit and the TTCA's election of remedies provision applied anyway; instead, the cases involved suits against the government for tort claims. *See Univ. of Tex. Health Sci. Ctr. at Hou. v. Rios*, 542 S.W.3d 530, 532 (Tex. 2017) ("A public employee may be individually liable for his *tortious conduct* outside the general scope of employment, but section 101.106 of the [TTCA] 'requir[es] a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the [TTCA] or proceeding against the employee alone.'" (emphasis added) (quoting *Mission Consol. Sch. Dist.*, 253 S.W.3d at 657)); *Hopkins v. Strickland*, No. 01-12-00315-CV, 2013 WL 1183302, at *1 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.) (mem. op.) ("Myles Hopkins, a former police chief of Liverpool, Texas, sued Bill Strickland, the mayor of Liverpool, for slander and malicious prosecution."); *Pishko v. Yurttas*, No. 10-13-00029-CV, 2013 WL 5890045, at *1 (Tex. App.—Waco Oct. 31, 2013, pet. denied) (mem. op.) (determining that because the plaintiff asserted a defamation claim against

the government unit and the employee in her first amended petition, the TTCA's election of remedies provision applied); *City of Corpus Christi v. Eby*, No. 13-09-00205-CV, 2011 WL 1437002, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 14, 2011, no pet.) (mem. op.) (involving claims for defamation, negligent supervision, conversion, theft, negligent violation of constitutional property rights, intentional and negligent infliction of emotional distress, false imprisonment, malicious prosecution, conspiracy, and participatory liability); *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 401 (Tex. App.—Fort Worth 2008, no pet.) ("Cherry Hill asserts the same tort claims against the City and Haskin arising from the same alleged facts."); *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 655 ("[The plaintiff] "alleged common-law claims against the ISD and Dyer for intentional infliction of emotional distress and against Dyer for defamation, fraud, and negligent misrepresentation."); *Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998) ("Plaintiffs responded that their claims came within the statutory waiver of immunity for 'personal injury and death [proximately] caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.'") (quoting TEX. CIV. PRAC. & REM. CODE § 101.021(2)).

The Individuals also cite *Travis v. City of Grand Prairie*, claiming that the court held that the TTCA's election of remedies provision barred the plaintiff's suit against the employee because the plaintiff sued the government unit for Title VII violations not brought pursuant to the TTCA, and the torts claims against the employee involved the same subject matter as the plaintiff's Title VII violations claim against the government unit. 654 Fed. App'x 161, 167 (5th Cir. 2016). However, this is incorrect. Instead, the

district court held that the plaintiff's Title VII claim was meritless because there had not been an employer/employee relationship between the plaintiff and the government unit. *Id.* at 166 ("Travis's allegations of retaliation do not arise out of an employment relationship and thus are not cognizable under Title VII. Accordingly, we affirm the district court's dismissal of his Title VII claims."). The plaintiff also sued the government unit and the employee for state law tort claims including false imprisonment, defamation, malicious prosecution, and intentional infliction of emotional distress. *Id.* The court held that the tort claims against the employee were from the same occurrence as the tort claims against the government unit and therefore barred by the TTCA's election of remedies provision. *Id.* at 167. The court stated, "Travis's state law claims [against the City] alleging false imprisonment, defamation, malicious prosecution, and intentional infliction of emotional distress are all based on intentional torts" that were "barred by sovereign immunity." *See id.* This case does not support the Individual's argument because Varco undisputedly did not file any tort claims against the City. *See Castro v. McNabb*, 319 S.W.3d 721, 732 (Tex. App.—El Paso 2009, no pet.) (concluding that the plaintiff's declaratory judgment action could not have been brought against the City of El Paso under the TTCA and reversing the trial court's dismissal of that claim); *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659 (explaining that the plaintiff's suit under the Texas Commission on Human Rights Act (TCHRA) is not a suit filed under the TTCA "and would not come within [TTCA's elections of remedies] purview because the [TTCA] expressly provides that the remedies it authorizes 'are in addition to any other legal remedies,' and the TCHRA provides a statutory remedy for unlawful discrimination").

It is undisputed that Varco did not sue the City for negligence under the TTCA or

any common law torts. Therefore, we cannot conclude that the trial court erred by not determining that Varco's suit against appellants was barred by the TTCA's election of remedies provision. *See Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 415 (Tex. 2015) ("[C]laims asserted pursuant to independent statutory waivers of immunity are not brought 'under' the [TTCA]."); *see also Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659 (explaining that "all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the TTCA]' for purposes of section 101.106").

By what we construe as a sub-issue to their first issue, the Individuals contend that because Varco filed suit against the SBEDC for torts, the TTCA's election of remedies provision bars Varco's suit against the Directors. This argument assumes that we concluded SBEDC is a government unit and immune from suit. However, as explained above, we have concluded that the SBEDC is not a government unit and is not immune from suit. We overrule the Individuals' first issue and sub-issue.

## C. Improper Service

SBEDC contends by its third issue, and the Individuals by their second issue, that the temporary injunction is invalid as to the Individuals because they were "never served with suit or notice of [the] injunction hearing."

### 1. Applicable Law

Rule 681 states, "No temporary injunction shall be issued without notice to the adverse party." TEX. R. CIV. P. 681; *Buchanan v. Androderm X, LLC*, No. 01-24-00762-CV, 2025 WL 3275140, at *8 (Tex. App.—Houston [1st Dist.] Nov. 25, 2025, no pet.) (mem. op.). "The underlying basis for enactment of [Rule] 681 was the recognition of an

20

individual's fundamental right to due process of law." *Kramer Trading Corp. of Tex. v. Lyons*, 740 S.W.2d 522, 524 (Tex. App.—Houston [1st Dist.] 1987, no writ) (citing TEX. CONST. art. 1, § 19). "[A] lack of notice violates basic principles of due process." *Buchanan*, 2025 WL 3275140, at *8 (quoting *Highsmith v. Highsmith*, 587 S.W.3d 771, 778 (Tex. 2019)). "Due process demands that a party be afforded 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.*

### 2.    Discussion

The Individuals were entitled to notice of the temporary injunction hearing pursuant to Rule 681 because Varco named them as adverse parties and sued them for, among other things, tortious interference with a contract. *See* TEX. R. CIV. P. 681. Nonetheless, Varco argues that notice was not required pursuant to Rule 683. *See id.* R. 683.

Texas Rule of Civil Procedure 683 states, "every *order granting an injunction* . . . is *binding* only upon *the parties* to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." *Id.* (emphasis added). Rule 683 makes a temporary injunction binding on the parties and those other non-parties which fit into Rule 683's categories, including officers, agents, servants, and employees of the parties and on anyone who is "in active concert or participation with" the parties and has received actual notice of the temporary injunction. *Id.*; *Met Water Vista Ridge, LP v. Blue Water Sys., LP*, 717 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2025, no pet.) ("[R]ule 683 clearly allows injunctions against non-parties as long as they have actual notice [of the order], whether 'by personal service or otherwise.'" (quoting TEX. R. CIV. P. 683)). "For good reason: 'a corporation can only act through human agents of one

21

kind or another,' so an injunction must bind those agents even if it 'might mention only the corporation.'" *Met Water Vista Ridge, LP*, 717 S.W.3d at 908 (quoting *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 701 (1956)).

Rule 683 allows for the enforcement of a properly issued temporary injunction against non-parties who are within Rule 683's criteria even if they did not receive notice of the temporary injunction hearing pursuant to 681. *See id.* at 907 (explaining that Texas law does not prohibit enjoining nonparties in all instances and that although they "were not named as parties, cited, or served," the question is whether these non-parties "fit into one of [R]ule 683's categories" and concluding that the temporary injunction against one of the non-parties satisfied Rule 683 because he was an agent). Thus, non-parties do not necessarily enjoy Rule 681's right to notice of a temporary injunction hearing. *See* TEX. R. CIV. P. 681.

Varco argues that the trial court correctly disregarded Rule 681's notice requirement because the Individuals were in active concert and participated in the enjoined acts with SBEDC. However, Varco chose to sue the Individuals and made them adverse parties. Thus, they were entitled to notice of the hearing under Rule 681. We have found no authority supporting the conclusion that even when Rule 681 has been violated, Rule 683 allows the temporary injunction to issue against adverse named parties. The cases cited by Varco and the authority we have found only support Rule 683's dispensation of Rule 681's notice requirement when a non-party challenges the temporary injunction. *See Huynh v. Blanchard*, 683 S.W.3d 30, 43 (Tex. App.—Tyler 2021), *aff'd in part, rev'd in part*, 694 S.W.3d 648 (Tex. 2024) ("In a footnote, Appellants urge that if the injunction is upheld, it is overbroad because it enjoins all Appellants and

22

attempts to bind non-parties."); *Hsin-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 295–96 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("The trial court enjoined actions undertaken by Su individually and 'by or through' F3 Capital [a nonnamed party] to dispose of the Vantage shares," and the court determined that F3 Capital was bound by the temporary injunction under Rule 683); *S.A. Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 700 (Tex. 1956) (explaining that a temporary injunction against the corporation is binding against the lawyers who work there even if not named parties).

Furthermore, we are not allowed to interpret a statute or rule in a manner which renders another statute or rule meaningless. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."). Rule 681's notice requirement would be rendered meaningless if we construed 683 in the manner argued by Varco—i.e. that, despite being designated as parties by Varco, the Individuals were not entitled to receive notice. *See id.* "[T]he remedy for a denial of due process is due process." *Buchanan*, 2025 WL 3275140, at *9 (quoting *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 268 (Tex. 2019)). Accordingly, we conclude that the trial court abused its discretion by issuing the temporary injunction against the Individuals without providing them notice of the hearing.[9] *See Sienna Ranch Invs., LLC v. Waller Indep. Sch. Dist.*, No. 14-20-00241-CV, 2021 WL 3358055, at *5 (Tex. App.—Houston [14th Dist.] Aug. 3, 2021, no pet.) (mem. op.) ("A trial court abuses its discretion in issuing a temporary injunction against a party who was not notified of the hearing.").

---

[9] Varco also argues that the temporary injunction is not invalid because SBEDC's representatives were not required to be served with the suit. Even if that is true, Rule 681 and due process required that notice of the temporary injunction hearing be provided to all of the Individuals as explained above.

Varco argues that even if it were error to issue the temporary injunction against the Individuals, such error was harmless because "the temporary injunction application was presumably known to SBEDC's counsel . . . when the trial court signed the TRO on December 31, 2024," and "[i]t defies belief that" SBEDC's trial counsel "who was also at that time lead counsel for the City[,] . . . would not have promptly supplied that TRO" to the Individuals. Parties who are afforded a meaningful opportunity to be heard on their defenses do not suffer harm from absence of adequate notice of a temporary injunction hearing. *Id*. In *Sienna Ranch*, the Fourteenth Court of Appeals held that the trial court afforded the parties a meaningful opportunity to be heard because the parties were served with process, they filed an answer and motion to vacate the temporary injunction, they offered evidence at the temporary injunction hearing, and they provided briefing regarding the temporary injunction. *See id.*

Here, however, there is nothing in the record showing that the Individuals engaged in even one of these activities. Therefore, we conclude they were not afforded a meaningful opportunity to be heard. We sustain the Individuals second issue.[10]

---

[10] Varco claims Sandoval and Palomo were notified of the temporary injunction hearing because Varco served them with a subpoena to appear at the temporary injunction hearing. The subpoena states that Sandoval and Palomo were summoned "to attend and give testimony in the temporary injunction of this cause." *See Old Republic Ins. v. Edwards*, No. 01-10-00150-CV, 2011 WL 2623994, at *12 (Tex. App.—Houston [1st Dist.] June 30, 2011, no pet.) (mem. op.) ("A party may be compelled to attend trial through a subpoena."); *see also* TEX. R. CIV. P. 176.2 (explaining that a subpoena notifies the recipient that he must either "attend and give testimony" and/or "produce and permit inspection and copying of designated documents or tangible things" in his possession). The subpoena did not notify Sandoval and Palomo that Varco had filed suit against them, that Varco had filed an application for a temporary injunction against them, or that they would have an opportunity to present evidence in their defense at the temporary injunction hearing. *Kramer Trading Corp. of Tex. v. Lyons*, 740 S.W.2d 522, 524 (Tex. App.—Houston [1st Dist.] 1987, no writ) ("The trial court is not authorized to enter an order of temporary injunction against a party before that party has had an opportunity to present its defenses and has rested its case."); *see also Oertel v. Gulf States Abrasive Mfg. Inc.*, 429 S.W.2d 623, 623 (Tex. App.—Houston [1st Dist.] 1968, no writ) ("Notice implies an opportunity to be heard. Hearing requires trial of an issue or issues of fact. Trial of an issue of fact necessitates opportunity to present evidence and not by only one side to the controversy." (citation modified)). Accordingly, we cannot conclude that because Varco subpoenaed Sandoval and Palomo as

## D.    Automatic Stay

SBEDC argues by its fourth issue that the trial court held the temporary injunction hearing in violation of an automatic stay imposed by virtue of its appeal of the plea to the jurisdiction ruling.[11] Specifically, SBEDC states that "[f]aced with [the trial court's] refusal to rule on a jurisdictional issue solely to allow [Varco] to proceed with an injunction hearing, [SBEDC] filed a notice of appeal on an implicit denial of the jurisdictional Plea before the injunction hearing." *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b) (stating that an interlocutory appeal of an order granting or denying a plea to the jurisdiction by a governmental unit "stays all . . . proceedings in the trial court pending resolution of that appeal"). Varco responds that SBEDC filed a notice of appeal stating it was appealing the trial court's "refus[al] to rule" and its "constructive denial" of its plea to the jurisdiction.

SBEDC cites *Thomas v. Long*, involving an appealable interlocutory summary judgment challenging the trial court's jurisdiction. 207 S.W.3d 334, 339 (Tex. 2006) ("The Legislature provided for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the procedural vehicle used.") (citation omitted). SBEDC quotes *Thomas* as follows: "Because a trial court cannot reach the merits of a case without subject matter jurisdiction, a trial court that *rules* on the merits of an issue without explicitly rejecting an asserted jurisdictional attack has implicitly denied the jurisdictional challenge." *See id.* at 339–40 (emphasis added)

---

witnesses, they were afforded meaningful notice or an opportunity to be heard. *See Sienna Ranch Invs., LLC v. Waller Indep. Sch. Dist.*, No. 14-20-00241-CV, 2021 WL 3358055, at *5 (Tex. App.—Houston [14th Dist.] Aug. 3, 2021, no pet.) (mem. op.) (determining that the defendants did not suffer harm from the trial court's error in issuing the temporary injunction because they presented evidence at the temporary injunction hearing and filed motions and briefing regarding the temporary injunction hearing that resulted in a partial positive outcome for the defendants).

[11] The Individuals make the same argument by their third issue. However, because we have sustained their second issue, we need not address the issue. *See* TEX. R. APP. P. 41.7.

(citation omitted). SBEDC argues that the trial court implicitly denied its plea to the jurisdiction prior to hearing evidence regarding the temporary injunction; therefore, an automatic stay prohibited the trial court from proceeding with the temporary injunction hearing. SBEDC states, "As a result there was no jurisdiction for the temporary injunction hearing and the injunction order is void" and "should be reversed and rescinded."

We are not persuaded by the authority cited or arguments made. When SBEDC filed its notice of appeal during the January 14 hearing, the trial court had not ruled on Varco's motion for temporary injunction or on any other motion and it had rescinded its oral denial of SBEDC's plea.[12] *Thomas* clearly states that the trial court's *ruling on the merits* constituted an implicit denial of the jurisdictional issue. *See id.* at 339–40. There was no such implicit ruling on the merits in this case when the trial court rescinded its oral order and heard the request for a temporary injunction. *See id.* at 339–40; *see also Paxton v. City of Austin*, 722 S.W.3d 50, 53 (Tex. App.—15th Dist. 2024, pet. granted) (explaining that it lacked jurisdiction and *Thomas* did not apply because "the trial court explicitly stated that it declined to rule on the plea to the jurisdiction" and "did not issue an order or any ruling on the merits . . . that could be construed as an implicit denial of the plea to the jurisdiction" and instead proceeded to trial); *Tex. Parks & Wildlife Dep't v. Rubio*, 483 S.W.3d 797, 799 (Tex. App.—El Paso 2016, no pet.) ("The factual scenario presented in the present appeal is distinguishable [from *Thomas*] for two reasons. First, the trial court

---

[12] Though the trial court did not refuse to rule on SBEDC's plea, it apparently rescinded its oral denial of the plea only so that the automatic appellate stay would not be invoked. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b). We acknowledge that this is an unusual procedure, and we do not condone it—courts should resolve jurisdictional issues promptly. That said, appellants do not challenge the trial court's jurisdiction to rescind its oral ruling. *See Bellamy v. Allegiance Benefit Plan Mgmt., Inc.*, 696 S.W.3d 751, 761 (Tex. App.—Eastland 2024, no pet.) ("Generally, 'a trial court has plenary jurisdiction to reconsider its interlocutory rulings . . . and [it] retains that [jurisdiction] until a final judgment or order is entered in the cause and the [judgment or order] becomes final.'" (quoting *White v. Baptist St. Anthony's Hosp.*, 188 S.W.3d 373, 374–75 (Tex. App.—Amarillo 2006, pet. denied))).

explicitly stated that it was staying any ruling on the plea to the jurisdiction. Second, the trial court's order did not reach the merits of Rubio's claims."). Accordingly, *Thomas* does not support SBEDC's arguments.

Next, the trial court did not refuse to rule on SBEDC's plea to the jurisdiction. Instead, it withheld its ruling until the conclusion of the January 14 hearing. *See Bass v. Waller Cnty. Sub-Reg'l Planning Comm'n*, 514 S.W.3d 908, 916 (Tex. App.—Austin 2017, no pet.) (explaining that "any implied jurisdictional ruling" made by the trial court's order granting a partial summary judgment "would have been effectively vacated by the" trial court's order on the defendant's plea to the jurisdiction, which reserved the jurisdictional issue until trial). Thus, to the extent that appellants complain that the trial court refused to rule, we conclude that argument is meritless.

Because the trial court did not rule on SBEDC's jurisdictional challenge prior to the temporary injunction hearing, we are unable to conclude that the trial court's actions were erroneous. Finally, even if we were to find the trial court did in fact rule on SBEDC's jurisdictional challenge prior to the temporary injunction hearing—without considering whether or not the rescission of the oral order was valid—SBEDC could not avail itself of the automatic stay in section 51.014(b) because we have found it is not a governmental unit and it cannot invoke appellate jurisdiction pursuant to the statute. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b). We overrule SBEDC's fourth issue.

### E.    Probable Right to Relief

SBEDC by its fifth issue contends that, to obtain a temporary injunction, Varco must have shown that it had a probable right to relief sought on all claims against all

appellants.[13] Varco responds that SBEDC cites no authority supporting its assertion and that it was "only required to establish a probable right of recovery as to one related cause of action."

SBEDC's sole argument is that if Varco failed to prove entitlement to the temporary injunction on *all* claims against it, we should reverse the temporary injunction. The appellants state, "If one domino falls on this probable right to recovery attack, the entire injunction falls," implying that even if we determine that Varco established a right to the relief sought for one of its causes of action, the temporary injunction is erroneous.

"The party seeking an injunction need not show a probable right to relief and injury on each of its claims; establishing the right to recover on one is sufficient to justify sustaining the temporary injunction." *City of Rio Grande City v. BFI Waste Servs. of Tex., LP*, No. 04-15-00729-CV, 2016 WL 5112224, at *10 (Tex. App.—San Antonio Sept. 21, 2016, pet. denied) (mem. op.) (citing *Brammer v. K.B. Home Lone Star, L.P.*, 114 S.W.3d 101, 110 (Tex. App.—Austin 2003, no pet.)); *see also Am. Med. Home Health Servs., LLC v. Legacy Home Health Agency, Inc.*, No. 04-20-00494-CV, 2022 WL 946521, at *6 n.5 (Tex. App.—San Antonio Mar. 30, 2022, pet. dism'd) (mem. op.) (citing *Washington v. Associated Builders & Contractors of S. Tex. Inc.*, 621 S.W.3d 305, 319 (Tex. App.—San Antonio 2021, no pet.)). Thus, we disagree that the temporary injunction was improper if Varco did not establish a probable right to relief for *all* of its claims. *See Am. Med. Home Health Servs., LLC*, 2022 WL 946521, at *6 n.5 (explaining that although the temporary injunction applicant had asserted other claims, the court was not "required to

---

[13] The Individuals make the same argument by their fourth issue. However, because we have sustained their second issue, we need not address their fourth issue. *See* TEX. R. APP. P. 41.7.

28

reach whether" the temporary injunction applicant had "presented evidence to support these additional" claims "[b]ecause an applicant is required only to plead and present evidence to support one cause of action to establish a probable right of recovery" (citing *Washington*, 621 S.W.3d at 319)). Accordingly, even assuming Varco only established a probable right to the relief sought for one of its claims, we cannot conclude that the trial court abused its discretion by granting the temporary injunction.[14] *See Washington*, 621 S.W.3d at 311 ("If an applicant pleads and proves each essential element to grant the temporary injunction for an independent cause of action, any trial court error pertaining to other independent causes of action is harmless because the pled and proven independent ground fully supports the temporary injunction."). We overrule SBEDC's fifth

---

[14] We note that Varco states it established a probable right to relief sought for its tortious interference with a contract claim. In its brief, SBEDC does not address how the trial court abused its discretion in determining that Varco had a probable right to relief for its tortious interference with a contract claim, and why that claim does not support the trial court from enjoining certain acts in the temporary injunction. *See* TEX. R. APP. P. 38.1(i). SBEDC does address why the trial court abused its discretion in issuing the temporary injunction on the basis that Varco had a probable right to the relief sought for its claims for Chapter 245 relief and breach of contract. However, as explained, the trial court needed to find that only one of Varco's claims supported issuing the temporary injunction. *City of Rio Grande City v. BFI Waste Servs. of Tex., LP*, No. 04-15-00729-CV, 2016 WL 5112224, at *10 (Tex. App.—San Antonio Sept. 21, 2016, pet. denied) (mem. op.) (citing *Brammer v. K.B. Home Lone Star, L.P.*, 114 S.W.3d 101, 110 (Tex. App.—Austin 2003, no pet.)); *see also Am. Med. Home Health Servs., LLC v. Legacy Home Health Agency, Inc.*, No. 04-20-00494-CV, 2022 WL 946521, at *6 (Tex. App.—San Antonio Mar. 30, 2022, pet. dism'd) (mem. op.) (citing *Washington v. Associated Builders & Contractors of S. Tex. Inc.*, 621 S.W.3d 305, 319 (Tex. App.—San Antonio 2021, no pet.)). Therefore, because Varco claimed it had a probable right to the relief sought for tortious interference with a contract, and SBEDC does not address that claim in its brief, we must affirm on that basis. *See Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 763 (Tex. App.—Texarkana 2017, pet. dism'd) ("When an unchallenged independent ground or basis supports the trial court's complained of ruling or order, 'we must accept the validity of that unchallenged independent ground, and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment.'" (quoting *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 424 (Tex. App.—Dallas 2009, no pet.)).

Next, in its reply brief, SBEDC contends that Varco did not show a probable right to the relief sought for its tortious interference with a contract claim. However, SBEDC is not allowed to bring a new issue in a reply brief; therefore, we may not address this issue. *See White v. Lozano*, 719 S.W.3d 407, 420 n.7 (Tex. App.—Corpus Christi–Edinburg 2025, no pet.) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court." (quoting *City of Donna v. Ramirez*, 548 S.W.3d 26, 34 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (citation modified)).

issue.[15]

## F. Irreparable Injury

SBEDC contends by its sixth issue that Varco did not establish an irreparable injury. Specifically, SBEDC argues that any claim of loss of rental payments "associated with the Notice of Attornment" and any "delay and disruption damages associated with finishing the project, as well as potentially damaged construction materials 'exposed to the elements,'" are all "calculable and do not constitute an irreparable injury." SBEDC further argues that an irreparable injury due to a loss of goodwill and damage to Varco's reputation are purely speculative.

Irreparable injury is established "by proving that damages would not adequately compensate the party or cannot be measured by any certain pecuniary standard." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 227 (Tex. App.—Fort Worth 2009, pet. denied). "Disruption to a business can be irreparable harm." *Id.* at 228. "Moreover, assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy." *Id.* If there is evidence that the claims of loss of goodwill and other intangibles are incalculable, then proof of an irreparable injury is shown even if some of the damages are calculable. *Id.* at 229; *see Towers v. Grogan*, No. 01–97–00946–CV, 1998 WL 191760, at *4 (Tex. App.— Houston [1st Dist.] Apr. 23, 1998, no pet.) (mem. op.) (concluding that intangibles that were incapable of being measured were enough to support the temporary injunction even though the breach of contract damages were calculable).

---

[15] SBEDC also argues that because it has immunity from suit, Varco could not have established a probable right of relief for its tortious interference of a contract claim. However, as explained above, we have concluded that SBEDC does not have immunity from suit.

Here, Varco presented evidence that appellants "harassed" its clients which adversely affected Varco's goodwill and reputation with those clients. There was evidence that the stop-work order's impeded Varco's ability to complete the project and adversely affected Varco's goodwill and reputation with its investors. And there was evidence that these disruptions had negatively affected the marketability of Resaca Village. Thus, Varco presented some evidence that it would suffer an irreparable injury if the trial court did not grant the temporary injunction. *See Frequent Flyer Depot, Inc.*, 281 S.W.3d at 227; *Towers*, 1998 WL 191760, at *4.

Additionally, although some of Varco's damages at trial on the merits may be calculable, Varco sought the temporary injunction to prevent the loss of its clientele, loss of its ability to complete the project, loss of goodwill and reputation, and harassment of its clients. This is the harm that the trial court found Varco would suffer absent the injunction. Accordingly, we hold the trial court did not abuse its discretion in finding Varco would suffer irreparable injury to its business goodwill, operations, and reputation if a temporary injunction were not granted. We overrule SBEDC's sixth issue.[16]

## G.    Status Quo

By its last issue, SBEDC contends that the temporary injunction "far exceeds the status quo" because "[i]t essentially serves as the Court 'finding' everything that [Varco] asserts in its Petition regarding contractual entitlement and right to rent collection is established and thus accomplishes the objective of the suit." Thus, SBEDC argues that "[a]ll of the enjoined relief is an abuse of discretion as to the [a]ppellants and should be

---

[16] The Individuals make the same argument by their fifth issue. However, because we have sustained their second issue, we need not address this issue. *See* TEX. R. APP. P. 41.7.

voided." We conclude that this issue is inadequately briefed as SBEDC does not support its argument that the temporary injunction is voidable with citation to appropriate authority or concise argument.[17] *See* TEX. R. APP. P. 38.1(i). We overrule SBEDC's last issue.[18]

## IV.    CONCLUSION

We reverse the temporary injunction in part insofar as it applies to the Individuals and remand to the trial court for further proceedings. We affirm the trial court's judgment in all other respects.

JAIME TIJERINA<br>
Chief Justice

Delivered and filed on the
21st day of May, 2026.

---

[17] We further note that appellants do not discuss the facts or the evidence that was before the trial court. *See* TEX. R. APP. P. 38.1(i).

[18] The Individuals make the same argument by their sixth issue. However, because we have sustained their second issue, we need not address this issue. *See* TEX. R. APP. P. 41.7.